# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

CINDY LOU STOTTLEMIRE,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO.: 5:16-cv-90

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying her claim for Supplemental Security Income.  (Doc. 1.) Plaintiff urges the Court to reverse the ALJ's decision and award her benefits, or in the alternative, remand this case for a proper determination of the evidence.  (Id.)  Defendant asserts the Commissioner's decision should be affirmed.  (Doc. 10.)  For the reasons which follow, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

On October 5, 2012, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning June 1, 2002,[1] due to a number of health problems including diabetes mellitus (Type II), depression, pain in her shoulder and back, and other complications. (Doc. 14, p. 1.)  After her claim was denied initially and upon reconsideration, Plaintiff filed a

---

[1] Plaintiff amended her alleged onset date from June 1, 2002, to November 24, 2014.  (Doc. 11-2, p. 21)

timely request for a hearing. Plaintiff's first two hearings were held before ALJ G. William Davenport ("ALJ Davenport") on February 14, 2014, and February 27, 2015, respectively. (Id. at pp. 1–2.) ALJ Davenport issued an unfavorable decision, but the Appeals Council remanded the case to further evaluate Plaintiff's mental impairments, give further consideration to her maximum residual functional capacity ("RFC"), evaluate the treating and non-treating source opinions, solicit more information from those sources as necessary, and obtain supplemental evidence from a vocational expert. (Doc. 11-3, pp. 58–59.)

On January 28, 2016, ALJ Casher held a hearing in Waycross, Georgia, at which Plaintiff, represented by counsel, appeared and testified. (Doc. 11-2, p. 21.) Kenneth L. Bennett, an impartial vocational expert, also appeared at the hearing. (Id.) ALJ Casher found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 301 et seq., (the "Act"). (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2.)

Plaintiff, born on November 24, 1959, was fifty-two (52) years old when she filed for social security application and was fifty-seven (57) when ALJ Casher issued his final decision. (Id. at pp. 31, 32.) She has a limited education and has past relevant work experience as an assistant retail manager. (Id. at pp. 30, 31.)

## DISCUSSION

### I.     The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c), 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the

impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the RFC to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since October 5, 2012, the application date. (Doc. 11-2, p. 23.) At Step Two, the ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine, degenerative joint disease of the right acromioclavicular joint, diabetes mellitus, obesity, and borderline intellectual functioning were considered "severe" under the "severity regulation." (Id. at pp. 23–24 (citing 20 C.F.R. § 416.920(c)).) At the next step, the ALJ determined that none of Plaintiff's medically determinable impairments met or medically equaled a listed impairment under the Regulations. (Id. at pp. 24–26.)

ALJ Casher found that Plaintiff had the RFC to perform less than the full range of medium work, as defined in 20 C.F.R. § 416.967(c). (Id. at pp. 26–30.) Plaintiff was capable of simple, routine tasks involving no more than simple, short instructions and should be confined to work with simple decisions and few changes. (Id. at p. 26.) The ALJ also limited Plaintiff to frequent right overhead reaching and only occasional exposure to hazardous working conditions, such as unprotected heights, dangerous machinery, and climbing ladders, ropes, or scaffolds.

(Id.)  The ALJ found Plaintiff capable of standing or walking for six hours of an eight-hour workday, could perform up to six hours of seated work, and could frequently push, pull, balance, stoop, kneel, crouch, and climb ramps or stairs.  (Id.)  At Step Four, ALJ Casher found Plaintiff unable to perform her past relevant work as an assistant retail manager.  (Id. at pp. 30–31.)  However, the ALJ concluded at the fifth and final step that Plaintiff could perform jobs at the unskilled, medium level, specifically as linen room attendant, food service worker, and hospital cleaner, all of which are jobs that exist in significant numbers in the national economy.  (Id. at pp. 31–32.)

## II.     Issues Presented

Plaintiff contends that the ALJ erred: (1) in considering the diabetes medication Metformin as treatment for her depression and in excluding her neuropathy as a "severe" impairment at Step Two; (2) by improperly weighing the opinion evidence in reaching his RFC determination; (3) by relying upon incomplete hypotheticals with the vocational expert and improperly determining Plaintiff's employability; and (4) by failing to properly explain his disability decision in light of statements made at the hearing and Plaintiff's amended alleged onset date. (Doc. 14, pp. 13–21.) Thus, Plaintiff asserts ALJ Casher's decision rests on less than substantial evidence.  (Id.)

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for

that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

## IV.    Step Two Determination of Severe Impairments

Plaintiff argues that ALJ Casher improperly concluded that Plaintiff's depression, anxiety, chronic pain, and neuropathy were not severe impairments at Step Two.[2]  (Doc. 14, p. 13.)  Plaintiff contends that the ALJ improperly considered the diabetes medication Metformin as helpful in Plaintiff's treatment of her mental health problems.  (Id. at pp. 13–14.)  Plaintiff further argues that the ALJ failed to adequately explain why he found neuropathy non-severe.  (Id.)

Defendant argues that substantial evidence supports the ALJ's exclusion of Plaintiff's depression and neuropathy from her several noted severe impairments.  (Doc. 16, pp. 5–6.)  Furthermore, Defendant argues that any error in the ALJ's finding at Step Two is harmless, because ultimately, the ALJ found in Plaintiff's favor at Step Two by determining her

---

[2]  Plaintiff includes various citations to the medical record showing the existence of these conditions to argue that each of them is "severe."  (Id.)

degenerative disc disease of the lumbar spine, degenerative joint disease of the right acromioclavicular joint, diabetes mellitus, obesity, and borderline intellectual functioning to be severe impairments.  (Id. at p. 6.)

At Step Two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 404.1523, 416.920(a)(4)(ii) & (c), 416.920a(a), 416.923. A condition is severe if it "significantly limits claimant's physical or mental ability to do basic work activities."  Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1521(a)–(b), 416.921(a)–(b).  Examples of "basic work activities" include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).[3]  Importantly, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Substantial evidence supports the ALJ's determination that Plaintiff's depression and neuropathy were not severe impairments.[4]  ALJ Casher specifically stated that, while Plaintiff had been diagnosed with depression, anxiety, chronic pain, and neuropathy, there was medical evidence from Plaintiff's long-term treating physician that her "mental conditions do not cause more than minimal effect on her ability to perform basic work activity."  (Doc. 11-2, pp. 23–24.)

---

[3]  The Court cites to the Regulations that were in effect at the time of the ALJ's decision on March 17, 2016.

[4]  Although Plaintiff mentions several other conditions found not to be "severe", she only includes argumentation as to depression and neuropathy.  Accordingly, the Court will only address those ailments.

In support of this finding, ALJ Casher provided abundant and specific citations to the record, which discussed Dr. Michael Deen's treatment and recent medical evidence. (Id.)

As to depression, in a March 2013 medical report, Dr. Deen clearly noted that Plaintiff's depression was being treated with Effexor and did not pose any secondary limitations to her ability to function. (Doc. 11-16, p. 32.) Moreover, recent medical records from September 2015 show Plaintiff reported that she was not feeling down, depressed, or hopeless. (Doc. 11-32, p. 46.) Records from October 2015 indicate that Plaintiff was of sound judgment and normal mood with "no depression." (Id. at p. 53.) As to Plaintiff's neuropathy, ALJ Casher considered her medical history of this condition, (doc. 11-2, p. 23), and determined that it did not cause more than a minimal limitation on her ability to perform basic work, (id.), albeit with little specific analysis. While Plaintiff cites medical records showing her history of neuropathy, the ALJ expressly considered this history, and the Court may not "decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Dyer, 395 F.3d at 1210 (alteration in original). "Rather, we must defer to the Commissioner's decision if it is supported by substantial evidence." Phillips, 357 F.3d at 1240 n.8. Here, a close review of the record indicates that, while Plaintiff had struggles with neuropathy, as well as depression, substantial evidence nonetheless supports the ALJ's "severity" finding. (See Doc. 11-16, p. 32; Doc. 11-32, pp. 46, 51, 53, 56.)

Critically, Plaintiff did not carry her burden to prove that these impairments significantly limited her ability to do basic work activities. See Crayton, 120 F.3d at 1219. In fact, substantial evidence supports the ALJ's determination that they did not. The ALJ noted that Plaintiff had been treated for her depression, had very recently reported not feeling depressed, and reviewed records showing Plaintiff with a normal gait and station and no tingling or numbness in her legs

and feet.  (Doc. 11-2, pp. 23–24.)    The ALJ considered Dr. Deen's prognosis regarding

Plaintiff's mental condition and his status as her long-term treating doctor, and those records,

along with more recent ones, support the ALJ's finding.  (Id. at p. 24; Doc. 11-16, p. 32; Doc.

11-32, pp. 46, 51, 53, 56.)

Finally, any error ALJ Casher may have committed in failing to fully explain his

neuropathy finding and in considering Plaintiff's depression treatable with Metformin, (doc. 11-

2, pp. 23–24), when finding that those impairments were not "severe" at Step Two, is harmless

because the ALJ proceeded with the sequential evaluation and addressed those impairments at

both the RFC analysis and Step Three.  See Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901,

903 (11th Cir. 2011) (per curiam) ("Even assuming the ALJ erred when he concluded

[plaintiff's] sleep apnea, obesity, and edema were not severe impairments, that error was

harmless because the ALJ considered all of his impairments in combination at later steps in the

evaluation process.").  The ALJ noted that none "of her impairments meet or medically equal" a

listed impairment. (Doc. 11-2, p. 24.)  Likewise, ALJ Casher "considered all symptoms" when

making his RFC assessment. (Id. at p. 26.)  Furthermore, the ALJ found in Plaintiff's favor at

Step Two and "[n]othing requires that the ALJ must identify, [as this Step], all of the

impairments that should be considered severe."  Heatly v. Comm'r of Soc. Sec., 382 F. App'x

823, 825 (11th Cir. 2010) (per curiam) (citations omitted).

Accordingly, the ALJ's determination that Plaintiff's depression and neuropathy were not

"severe" impairments was proper and any possible error harmless.  As such, Plaintiff's argument

that ALJ Casher's determination at Step Two lacked substantial evidence is without merit.

## V.     The ALJ's RFC Determination

Plaintiff asserts that ALJ Casher's RFC determination lacks substantial evidence because he improperly weighed the opinion evidence of record to reach this determination. (Doc. 14, pp. 16–18.) Specifically, Plaintiff argues the ALJ did not afford sufficient weight to Dr. Deen's opinion and entirely ignored the opinion of Dr. John Shutack. (Id.) According to Plaintiff, Dr. Deen's opinion should have been afforded more than "some weight" because his opinion "is far more consistent with the RFC of a woman in her fifties with multiple health issues than the ALJ's RFC determination." (Id. at p. 17.)

Defendant responds that ALJ Casher "properly considered all the relevant evidence, including the medical evidence and opinion evidence, in assessing Plaintiff's RFC." (Doc. 17, p. 8.) Specifically, Defendant contends the ALJ properly afforded some weight to Dr. Deen's opinion, (id. at pp. 10–11), and properly excluded Dr. Shutack's dated opinion, (id. at p. 12). Finally, Defendant asserts Plaintiff failed to meet her ultimate burden of proving a disability, which requires limitations greater than those the ALJ assessed in finding Plaintiff's RFC. (Id.)

An RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), (e)(2).

ALJ Casher stated that he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence before determining Plaintiff's RFC. (Doc. 11-2, p. 26.) As detailed above, ALJ Casher found

that the substantial evidence revealed Plaintiff maintained the RFC to perform medium work with exertional limitations on her sitting, standing, walking, pushing, and pulling, as well as non-exertional limitations on her ability to balance and climb, to comprehend more than simple, short instructions, and perform more than simple, routine tasks. (Id.) In coming to this conclusion, the ALJ considered the opinions of Drs. Langston Cleveland, Abraham Oyewo, Harold Sours, Deen, John Whitley, and Lindi Meadows, primarily relying on the opinions of Drs. Cleveland and Whitley. (Doc. 11-2, pp. 29–30.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the

examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

After considering each of Plaintiff's allegations of disability, (doc. 11-2, p. 27), and extensively reviewing the medical evidence of record as to Plaintiff's diabetes, obesity, back and shoulder impairments, mental health, intellectual ability, and general physical disposition, (id. at pp. 27–29), ALJ Casher concluded that the medical opinions of record "are not persuasive in limiting the claimant further than the RFC set forth herein," (id. at p. 29). Even so, the ALJ conducted a detailed discussion of each doctor's opinion.[5]

Dr. Cleveland, whose assessment the ALJ found particularly significant, conducted a consultative examination for the State Agency in April 2014. (Id. at pp. 28–29.) Dr. Cleveland's detailed physical examination found Plaintiff to be moderately overweight but in no apparent distress. (Id. at p. 28.) Dr. Cleveland found normal neurological functioning and discerned no abnormalities in Plaintiff's extremities or swelling of her joint lines. (Id.) Moreover, Dr. Cleveland's battery of tests revealed that Plaintiff was capable of continuously lifting or carrying up to ten pounds, frequently up to twenty pounds, and occasionally up to fifty pounds. (Id. at p. 29.) Additionally, the examination showed Plaintiff could sit for five hours and stand/walk for three hours in an eight-hour workday. (Id.) A review of the record confirms ALJ Casher faithfully considered Dr. Cleveland's findings. (Doc. 11-31, pp. 28–37, 39–42; Doc. 11-32, pp.

---

[5]  Plaintiff does not discuss or challenge Dr. Whitley or Dr. Meadows' opinions concerning Plaintiff's mental impairment.

2–7.) The ALJ afforded "significant weight" to this opinion because the findings were supported by the objective physical examination and were consistent with the medical evidence of record. (Doc. 11-2, p. 29.)

Dr. Oweyo, a medical consultant, completed a physical RFC assessment in December 2012 and found Plaintiff could perform light work, but she was able to sit and stand/walk for six hours in an eight-hour workday. (Id. at p. 29.) Additionally, Dr. Oweyo found Plaintiff was able to occasionally climb ladders, ropes, and scaffolds, stoop, and crouch, but she could frequently climb stairs, balance, kneel, and crawl. (Id.) She was also limited from exposure to fumes, odors, dust, gases, and poorly ventilated areas. (Id.) Upon reconsideration, Dr. Sours affirmed this initial RFC determination. (Id.) A review of the record confirms ALJ Casher correctly recounted this earlier RFC. (Doc. 11-3, pp. 7–8.) The ALJ afforded these two opinions "some weight" because, while the postural limitations were consistent with the medical record, the exertional limitations were inconsistent with both the medical record and objective findings. (Doc. 11-2, p. 29.)

Lastly, Dr. Deen, Plaintiff's long-term treating physician, opined in January 2014 and again in January 2015 that Plaintiff could walk zero city blocks, sit for thirty minutes and stand for twenty minutes at one time but sit for four hours and stand/walk for two hours in an eight-hour workday. (Id. at p. 29; see also Doc. 11-31, p. 19–20; Doc. 11-32, pp. 41–42.) In his RFC opinion, Dr. Deen also limited Plaintiff to only occasional lifting of ten pounds, to only forty-five minutes of reaching while at work, and required ten-minute unscheduled breaks every thirty minutes. (Id.) Dr. Deen concluded Plaintiff would be absent from work more than four times per month and incapable of sustained employment. (Id. at p. 30.) Although this final opinion was on an issue reserved to the Commissioner, ALJ Casher nonetheless gave it consideration

pursuant to SSR 06-3p.[6]  (Id.)  However, the ALJ afforded only "some weight" to Dr. Deen's

opinion because, although he was a long-term treating physician, his treatment records failed "to

support his limitations and the limitations [were] not consistent with the objective results which

are given more weight."  (Id.)

Plaintiff argues Dr. Deen's opinion should be given more weight due to his status as her

long-term physician and speculates that it is more consistent with her age and health issues.

(Doc. 14, p. 17.)  The precise issue before the Court is whether the ALJ had "good cause" to

discount Dr. Deen's RFC opinion as Plaintiff's treating physician.   Her arguments

notwithstanding, a review of the record and ALJ Casher's decision demonstrates the requisite

"good cause."  As noted directly above, the ALJ found Dr. Deen's opinion was not "bolstered"

by the record, "contrary" to the objective results, and "conclusory or inconsistent" with his own

treatment records.  Winschel, 631 F.3d at 1179 (citation omitted).  ALJ Casher clearly articulated

his reasons for giving less weight to Dr. Deen's opinion, all of which are sufficient "good cause"

under Winschel.   Given the lack of record support for Dr. Deen's RFC opinion and its

contradiction with other objective findings of record, ALJ Casher was entitled to discount this

opinion with "good cause."

Furthermore, ALJ Casher properly considered Dr. Deen's treatment relationship with

Plaintiff, as required under 20 C.F.R. § 416.927(c), and Plaintiff fails to point to any record facts

which undermine or call into question the ALJ's determination as to the weight of Dr. Deen's

opinion.  Plaintiff merely argues Dr. Deen's treatment relationship and speculates that his

opinion is more consistent with Plaintiff's present condition, (doc. 14, p. 17), but this is not

---

[6] Opinions as to disability are reserved to the Commissioner.  20 C.F.R. § 416.927(d).  SSR 06-3p, which requires ALJs to consider medical source opinions about any issue, has since been rescinded on other grounds, effective March 27, 2017.  See 82 Fed. Reg. 5844, 5845–55 (January 18, 2017); 82 Fed. Reg. 15263 (March 27, 2017).

enough.  See Moore, 405 F.3d at 1213 (extrapolation and conjecture remain insufficient to disturb the ALJ's RFC determination, where it is supported by substantial evidence).  In this case, ALJ Casher had substantial evidence, namely Dr. Cleveland's detailed examination and in-depth discussion of Plaintiff's condition, to both support his RFC determination and discount Dr. Deen's opinion.  It is not the province of this Court to upset the Commissioner's final RFC determination where, as here, the ALJ has supported his decision with substantial evidence and applied the appropriate legal standards.

Accordingly, Plaintiff's argument that the ALJ erred in his consideration of Dr. Deen's opinion and incorrectly determined an RFC of medium work with some limitations is without merit.[7]

## VI.  Step Five Determination of Ability to Adjust to Work in the National Economy

Plaintiff argues that ALJ Casher lacked substantial evidence at this step because he utilized allegedly incomplete hypotheticals in his questioning of the vocational expert.  (Doc. 14-1, p. 18.)  Plaintiff also reiterates her Step Two and RFC arguments, contending the ALJ failed at Step Five due to error at these prior determinations.  Finally, Plaintiff argues the ALJ erred due to an exchange at the January 2016 hearing.  (Id.)  Defendant responds that Plaintiff's argument necessarily fails because the ALJ's Step Two and RFC determinations were supported by

---

[7]  Plaintiff's argument that the ALJ erred by not discussing Dr. Shutack's February 2008 opinion is also without merit.  Dr. Shutack's rather stale opinion that Plaintiff was "temporarily" unable to work for six to nine months after a January 2008 back surgery, (doc. 14, p. 17), clearly has no effect on her present RFC determination and falls far outside of the relevant period, which generally begins at the alleged onset date.  See Popham v. Acting Comm'r Soc. Sec., 681 F. App'x 754, 756 n.2 (11th Cir. 2017) (per curiam). Plaintiff amended her alleged onset date to November 2014 and did not apply for Social Security benefits until October 2012, both of which are years past Dr. Shutack's February 2008 opinion concerning her post back surgery condition.  Plaintiff has not shown in either her opening Brief or Reply, (docs. 14, 18), that Dr. Shutack's temporary limitations continued to the relevant period.  Further, if any limitations Dr. Shutack found were still lingering, such limitation would have been necessarily discovered by Dr. Cleveland in his April 2014 physical examination and would have been accounted for in his in-depth medical report, to which the ALJ gave great weight.  Accordingly, ALJ Casher did not err by excluding Dr. Shutack's dated opinion from his RFC determination.

substantial evidence and because Plaintiff misunderstands the hearing exchange in question. (Doc. 17, pp. 13–14.)

Under the Act, an individual is disabled if she is unable to do her previous work and cannot "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(1)(B). The Act further defines "work which exists in the national economy" to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. Significantly, the Eleventh Circuit Court of Appeals has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." Atha v. Comm'r of Soc. Sec., 616 F. App'x 931, 934 (11th Cir. 2015). Instead, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Id. (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)).

"[B]ecause an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, we [cannot] reweigh the evidence or 'substitute our judgment for that of the Secretary.'" Id. (quoting Allen, 816 F.2d at 602). An ALJ's reliance on the vocational expert provides such substantial evidence so long as a hypothetical question is posed which incorporates all of the claimant's impairments. Id.; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (holding that the ALJ may rely on the vocational expert's testimony as substantial evidence to support a determination of no disability); Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which

comprises all of the claimant's impairments.")  However, the hypothetical need only include the impairments which the ALJ accepts as true.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

At the outset, it must be noted that Plaintiff's argument premised on the ALJ's alleged failures at the Step Two and RFC determinations fails for the reasons set forth above in Sections IV and V of this Report.  Moreover, ALJ Casher properly relied on vocational expert Kenneth Bennett's testimony that Plaintiff could perform the jobs of linen room attendant, food service worker, or hospital cleaner.  (Doc. 12-2, p. 30.)  Mr. Bennett further testified that, in the national economy, there are: 25,000 jobs for linen room attendant; 100,000 jobs for food service worker; and also 100,000 jobs for hospital cleaner.  (Id.)  Mr. Bennett provided this testimony in response to ALJ Casher's specific hypothetical asking for jobs in the national economy that an individual of Plaintiff's age, education, and work experience, as limited by her medium-work RFC, could perform.  (Id. at pp. 29–30.)  The hypothetical posed to Mr. Bennett accounted for the limitations detailed in ALJ Casher's RFC, which in turn found substantial support in Drs. Cleveland and Oyewo's assessments and opinions.[8]  (Id.; see Doc. 11-2, pp. 26, 28, 29.)  The ALJ also posed an alternative hypothetical to Mr. Bennett which accounted for Dr. Deen's opined limitations, and Mr. Bennett testified that a person with those limitations would be unable to find work in the national economy.  (Doc. 12-2, pp. 30–33.)  The hypotheticals ALJ Casher used were anything but incomplete.  Furthermore, Plaintiff fails to explain or show how those hypotheticals were incomplete or otherwise failed to incorporate the Plaintiff's impairments and limitations.[9]

---

[8]  Although much of the RFC found by ALJ Casher stemmed from Dr. Cleveland's assessment, he based Plaintiff's ability to sit, stand, and walk for six hours of an eight-hour workday on Dr. Oyewo's December 2012 assessment, as affirmed by Dr. Sours.  (See Doc. 11-2, pp. 26, 29.)

[9]  Plaintiff's counsel at the hearing even agreed that ALJ Casher employed a "comprehensive" RFC in his questioning of Mr. Bennett.  (Id. at p. 36.)

Finally, although ALJ Casher failed to explain his misleading hearing statements, as discussed below, they do not undermine the substantial evidence from Mr. Bennett supporting the ALJ's Step Five determination.  It suffices to say here that the ALJ's remarks about Plaintiff being found disabled if she had an alleged onset date of fifty-five (55) were conditioned on her being limited to an RFC of light work rather than the RFC of modified medium work ultimately decided upon by the ALJ.  (See id. at pp. 36–38.)  Contrary to Plaintiff's argument, she maintains an RFC of medium, not light work, (doc. 14, p. 20), and as discussed above, this RFC determination is supported by substantial evidence.

Accordingly, the Court finds that substantial evidence supports the ALJ's determination that significant jobs exist in the national economy that Plaintiff can perform.  This enumeration of error is without merit.

## VII.    The ALJ's Unexplained Hearing Statements

After Plaintiff's counsel finished questioning Mr. Bennett, he argued that the evidence restricted his client to a light rather than medium level work, which with her present age and limited work experience, would have rendered her disabled under the Medical Vocational Guidelines.  (Doc. 12-2, p. 36.)  Compare 20 C.F.R. Part 404, Subpt P, App. 2 §§ 202.00(c), 202.01 with § 203.00(b), 203.11 (showing a person with Plaintiff's profile disabled under the Vocational Guidelines when ascribed a light work profile but not disabled when ascribed a medium work profile).  The ALJ remarked:

ALJ:  At 55?

ATTY: Yes.  And prior to that, Your Honor, my client's testimony and Dr. Deen's opinion certainly put her at a sedentary or less RFC which would essentially put her disabled closer to her filing date as that's the relevant period in the case.  I had discussed with my client earlier about amending to age 55.  We certainly have no, we, we're not opposed to doing that if Your Honor finds it necessary . . . .

ALJ: Counsel, I mean quite frankly I think your argument is well taken at age 50. That's where I was looking quite frankly just to let you know.

ATTY: Okay

ALJ: From the records. Now if that's something your client and you can agree on, *I can tell you on the record I would pay at 55.* If that's amenable. I'm not trying to twist your arm but I'm just trying to be up front with you . . . .

ATTY: And I really appreciate that. That's why I discussed it with my client before. Is that okay?

PLAINTIFF: That's fine. My main thing is . . . the Medicaid card . . . .

ALJ: Sure.

PLAINTIFF: . . . and get the medications I need, that's the most important thing.

ALJ: Right. And I understand that. But it's my job to, based upon the objective records, okay, and as you heard your counsel and I talk, I believe, that my review of the records et cetera, I believe that *prior to age 55*, you might have been able to do light work, okay. And as your counsel indicated, at 55, the rules change, okay, and that's why he brought that forth . . . .

PLAINTIFF: Yeah.

ALJ: So you're in agreement to change your onset date to age 55?

PLAINTIFF: Yes, sir.

ALJ: And you realize that when you change that, you will not be paid back to 2002, your original onset—

PLAINTIFF: Yes.

ALJ: . . . date? You do understand that?

PLAINTIFF: Yes, sir.

(Doc. 12-2, pp. 36–38 (emphases added).)  The ALJ then let the record reflect Plaintiff's amended alleged onset date of November 24, 2014. (Id.)

Plaintiff argues that ALJ Casher's subsequent failure to explain this colloquy in his written decision violates his duty under 42 U.S.C. § 405(b)(1) to provide a reasoned decision. (Doc. 14, p. 20.) Plaintiff further argues this exchange undermines the ALJ's Step Five decision, (id. at p. 18), and that ALJ Casher should have found Plaintiff disabled or limited her to light work due to this exchange and her new alleged onset date, (id. at pp. 20–21; doc. 18., pp. 2–3.) Defendant responds that the ALJ's decisions are supported by substantial evidence and adequate legal analysis. (Doc. 17, p. 14.)

When considered in isolation, the ALJ's somewhat spurious comment, "Now if that's something your client and you can agree on, I can tell you on the record I would pay at 55," (doc. 12-2, p. 37), could certainly lead Plaintiff to reasonably believe that he would find her disabled, and thus eligible for benefits, if she simply changed her alleged onset date. However, ALJ Casher followed that comment by stating, "I believe that *prior* to age 55, you might have been able to do *light* work." (Id.) The clear implication of this statement is two-fold: first, the ALJ's comment that he would be willing to rule in her favor with a later onset date was made in the context of a light work limitation, and, second, ALJ Casher considered Plaintiff to have different limitations prior to her turning 55 than what she did at the time of his decision. As Defendant correctly notes, Plaintiff's argument "ignores the fact that the 'light work' scenario discussed at the hearing" differs from the ALJ's ultimate assessment for a limited range of medium work. (Doc. 17, p. 14.) The ALJ should have explained this distinction in his final decision, especially in light of his comments at the hearing, but his failure to do so does not require a reversal.

Although the lack of clarity by the ALJ is lamentable, his ill-advised hearing comments do not bind the Agency and do not necessarily require explanation. Section 405(h) of Title 42 of the United States Code provides that "the findings and decisions of the [Commissioner] *after* a

hearing shall be binding upon all individuals who were parties to such a hearing." See also 20 C.F.R. § 404.953(a) (the ALJ "shall issue a written decision that gives the findings of fact and the reasons for the decision"). The central focus of the Court's inquiry is not whether the ALJ adequately explained each statement made on the record at the hearing but whether the ALJ's final determination rests on substantial evidence. As discussed above, each of ALJ Casher's determinations is supported by substantial evidence, as found in the record and thoroughly explained in his written decision, (doc. 11-2, pp. 21–32.) Moreover, the purpose of a Social Security hearing is to adduce pertinent information for the ALJ to later make a determination based on the entire record. It is not to reach an ultimate conclusion or render a final verdict. See Crawford & Co. v. Apfel, 235 F.3d 1298, 1304 (11th Cir. 2000) ("Social [S]ecurity disability proceedings are inquisitorial rather than adversarial. . . . [I]t is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits[.]"). Irrespective of any comments ALJ Casher made at the hearing, his decision is supported by the record as a whole and must be affirmed. Martin, 894 F.2d at 1529.

Furthermore, Plaintiff fails to cite any statute, regulation, or case mandating that the ALJ's subsequent written decision must either be consistent with or fully explain prior oral statements, and the Court discerns none as well. Simply, there is no support for the idea that the ALJ must explain every discrepancy between hearing statements and the final determination. In a case with strikingly similar facts, an ALJ represented a favorable decision would follow if a claimant amended his alleged onset date, but the claimant declined to amend and was later denied benefits. Lindsey v. Barnhart, 161 F. App'x 862, 870 (11th Cir. 2006) (per curiam). The Eleventh Circuit held that the hearing complied with due process by stating, "Although it was

arguably improper for the ALJ to make such an offer, nothing in the record suggests that the ALJ held [the claimant's] refusal to amend his onset date against him." Id.

Likewise, here, while ALJ Casher should have refrained from making such an unexplained statement, nothing in the record suggests that his final decision is unsupported by substantial evidence or otherwise contrary to the record. Therefore, the Court finds ALJ Casher's remarks on the record insufficient to disturb his final written decision. See Wells v. Colvin, No. 3:13-cv-596, 2015 WL 893175, at *8 (N.D. Fla. Mar. 2, 2015) (finding no error where "the ALJ's decision identified sufficient evidence from which to make an informed decision, regardless of comments the ALJ made at the hearing"); Smith v. Astrue, No. 2:08-cv-452, 2009 WL 4067393, at *3–4 (E.D. Va. Nov. 20, 2009) (finding that inconsistent oral statements by the ALJ cannot undermine written decisions and do not trigger a reversal).

Accordingly, the Court finds that ALJ Casher adequately explained his decision and supported it with substantial evidence, his challenged hearing statement notwithstanding. Plaintiff's enumeration of error on this front is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of March, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA